## Case No. 1,569.

### The BLUE JACKET.

[10 Ben. 248.][2]

District Court, E. D. New York. Jan. Term, 1879.[3]

SHIPPING—DAMAGE TO CARGO—PERILS OF THE SEA — NEGLIGENCE OF MASTER—SURVEY.

1. A quantity of sacks of barley were shipped at San Francisco, to be carried to New York, under bills of lading which excepted perils of the sea. The ship met with heavy weather and began to leak before she reached the Horn, and put into Rio in distress. A survey was had, which recommended that the cargo be discharged until the leak should stop or the ship should be in ballast trim. Accordingly, all the cargo was discharged except 3,093 sacks of barley forming the ground tier, with some at the ends of the ship. A second survey was then had, which reported that the underside of the ground tier was damaged by sea-water, but recommended that all the cargo, damaged or not damaged, should be taken forward. The ship was then repaired, the cargo was reloaded, it being

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[3] Affirmed by the circuit court, July, 1880. [Decree unreported.]

---

all then dry, and the voyage completed. On the discharge of the cargo at New York it was found not only that a portion of it had been damaged by salt water, but that the rest of it, though in external appearance undamaged, had to a great extent lost the malting quality, and it was sold at auction at a loss, and libels were filed against the ship to recover the damage: Held, that, as to the cargo which appeared to have been wet with sea-water, the ship was not responsible, because it came from the leak, which was a peril of the sea.

2. That, as to the destruction of the malting quality, the cause of it appeared to be the leak, which, causing a damp atmosphere in the hold, had led to the germination of the grain, and that the presumption was that the leak had caused that damp atmosphere before the ship arrived at Rio, and that there was no evidence to overbear that presumption.

3. That, on the proofs, the master, having followed the advice of a duly constituted survey in good faith, could not be held negligent in taking in the cargo that had been discharged without taking out the ground tier.

[See The Amelie, 6 Wall. (73 U. S.) 27.]

4. That the action could not be maintained, inasmuch as no breach of duty on the part of the master had been shown.

In admiralty.

[See Neidlinger v. Insurance Co. of North America, Case No. 10,086, for decision of a case arising out of substantially the same state of facts.]

Scudder & Carter and W. W. Goodrich, for libellants.

Benedict, Taft & Benedict, for claimant.

BENEDICT, District Judge. These two actions, which were tried together, are brought by David Jones and by Adam Neidlinger et al., the owners of certain sacks of barley shipped in San Francisco upon the ship Blue Jacket, to be transported therein to the city of New York, and there delivered in like good order as received.

The bills of lading admit the reception of the barley in good order and agree to deliver it in New York, perils of the sea excepted.

The number of sacks consigned to the libellant Jones was 9,087; the number consigned to Neidlinger was 16,822. All are proved to have been well stowed in San Francisco, and when the ship sailed she was sound and staunch. On the voyage the vessel met with heavy weather and began to leak before she reached the Horn. The leak increased so that finally she was compelled to bear up for Rio in distress. She arrived in Rio in distress on the 15th of January, 1877, and a survey was had by which it was recommended that the cargo be discharged until the leak should stop or the ship be in ballast trim. In accordance with the recommendation of the survey 22,817 sacks of barley besides other cargo were taken out, leaving in the ship 3,093 sacks, forming the ground tier, with some at the end of the ship. After the discharge of this part of the cargo a second survey was had; according to that survey some of the barley and wool amid-

ships was then slightly damaged, and the under side of the lower tier in the lower hold was damaged by sea-water. The recommendation of the survey was that all the cargo, damaged or not damaged, be taken forward to its original destination. In accordance with this recommendation the ship went upon the dock on the 16th of February, and was then repaired. On the 1st of March she began to take in her cargo again, and on the 18th of March she sailed for New York, where she arrived in safety on the 11th of May, and without any further damage from perils of the seas.

Upon the discharge of the barley in New York two kinds of damage were disclosed. Some of the sacks showed ordinary sea damage, caused by sea water having leaked into the vessel and upon the sacks. In the view I take of this case, it is immaterial what number of sacks were damaged from this cause. The remainder of the barley, constituting the greater part of the cargo, was bright, hard and in external appearance sound and undamaged. Upon testing the barley for that purpose, however, it was ascertained that the great proportion of the grains had lost the malting capacity, and consequently the barley was unfit for malting and unmerchantable as barley for malting purposes. Whereupon it was all sold at auction and brought from 47 to 55 cents per bushel, the market price of merchantable barley fit for malting being then $1.10 per bushel.

These actions are brought to recover of the ship the loss as disclosed by the auction sale. In my opinion they cannot be sustained, and for the following reasons:—In regard to that part of the barley with which sea water came in contact, of course the ship is not responsible, because no sea water reached the cargo except through the leak which occurred before the ship put into Rio, and that arose from a peril of the seas. In regard to the destruction of the malting capacity of the rest, the ship is not responsible, for the reason that, if the cause of this condition of the barley can be inferred from any facts proved, that cause was the sea water that leaked into the vessel, which, by creating a damp atmosphere in the hold, started germination in the grain, and that being thereafter stopped, would never start again. As germination in grain is the natural result of dampness, accompanied with the heat of the hold, the proximate cause of the injury was the peril of the sea.

But it is contended that no damage would have ensued if the portion of the cargo that had been wet by the leak had been abandoned in Rio, and that it was negligence to stow barley that had not been wet upon the lower tier which had been wet, for which negligence the ship is liable. The sufficient answer is, that the evidence will not warrant the conclusion that the presence in the ship during the passage from Rio to New York of the barley that had been wet by the leak was the cause of the destruction of the malting capacity of the grain.

The libellants' claim is that wetting of the lower tier, together with heat, caused the destruction of the malting capacity. But there was wetting and heat before the ship reached Rio, and the presumption is that such wetting and heat then produced its natural result.

When, therefore, it is sought to hold the ship liable upon the ground that such result occurred after the ship left Rio, the burden is upon the libellants, to show such to be the fact. This has not been done. For all that has been here proved, the condition of the barley when reloaded in Rio was the same as its condition when landed in New York. Indeed there is direct evidence that such was the fact, and there is no ground to contend upon the evidence that any of the grain was wet when the cargo was reloaded at Rio. The circumstances combine with the positive evidence to show that all the cargo was then dry. Moreover, not only is it impossible to find upon this evidence that the loss of malting capacity in the barley was caused after the ship was reloaded in Rio, but it is also impossible to find the master guilty of negligence in regard to the reloading. Rio, it must be recollected, was a port of distress. The condition of the ship and cargo upon arrival in Rio forced upon the master of the ship the question whether to abandon the barley that had been wet or to carry it forward. Upon this question he took the advice of competent persons given in due form after survey. The advice of the survey was that all the barley be carried forward in the ship. The integrity of the surveyors is not called in question by any testimony to the contrary. No witness who saw the condition of the cargo in Rio is called to say that what was done was not what the facts as they then appeared indicated to be the best course to pursue.

The master followed the advice of a duly constituted survey. His good faith is not disputed. How, then, shall it be said that he was guilty of negligence? The advice of a fair, competent and disinterested survey is always considered to be strong evidence in justification of a course adopted by the master of a ship in a port of distress. The Amelie, 6 Wall. [73 U. S.] 27. If, contrary to his own judgment and contrary to the opinion of experienced persons called to hold the surveys, the master of this ship had sold or abandoned any part of the barley at Rio, could he have made answer to the charge of not performing the contract in the bill of lading? And if not, can he now be held guilty of negligence in omitting to do what it would have been negligence to have done?

If there were testimony to show a defect in the manner of restowing the cargo at Rio, or if it had been proven that the cause of the damage in question was the use of the

old sails for dunnage, upon which counsel laid stress, there would then be ground for the contention that the ship is liable because of the negligence on the part of the master. But the testimony fails to make out such a case.

Upon the evidence it is impossible to say that any different mode of restowing the cargo at Rio should have been adopted. The point endeavored to be made is, not that the cargo carried from Rio to New York should have been stowed differently in Rio, but that there was negligence in permitting the barley that had been wet to form a part of that cargo. In view of the result there may be those who entertain the opinion that it was a mistake on the part of the master to attempt to carry forward the barley that had been wet, and that the result of that mistake is seen in the damage sued for. But if, as it turned out, a mistake was committed in this particular, and if the damage in question is the result of such a mistake—two propositions by no means certain—it does not follow that the master exhibited in this particular such a want of reasonable skill, diligence and care as to convict him of neglect of duty in the premises. In order to maintain this action against the ship, a breach of duty on the part of the master must be shown. Notara v. Henderson, 1 Asp. 278.

The libels must be dismissed, with costs.